UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

| | | |
|---|---|---|
| ERIC MARION, | : | |
| | : | |
| Plaintiff, | : | Civil Action. No._____ |
| | : | |
| v. | : | |
| | : | |
| AMERISOURCEBERGEN DRUG CORPORATION | : | |
| | : | **JURY TRIAL DEMAND** |
| Defendants. | : | |
| | : | |

----------------------------------------------------------------X

## NATURE OF THE ACTION

This is an action under federal and state anti-discrimination and anti-retaliation laws to correct unlawful employment practices in employment.  Two of defendant's male managers subjected plaintiff Eric Marion to same-sex sexual harassment, creating a hostile and unsafe working environment for plaintiff.  Following a series of good faith complaints by Marion, defendant employer and its Human Resources group retaliated against him after he engaged in protected activity and opposed his supervisors' unlawful harassment and creation of a hostile environment.

Defendant terminated Marion's employment, and relied on pretextual reasons that his comportment created alleged "disharmony" in the workplace.  As charged with greater particularity below, defendant employer violated Title VII of the Civil Rights Act of 1964, and the New York Human Rights Law by creating a hostile environment on the basis of Marion's gender, male, and then firing him after he continued to make good faith complaints about the harassment and defendant's lack of remedial action in making him safe from sexual advances.

**JURY DEMAND**

1. Plaintiff Eric Marion demands a trial by jury of all issues in this action.

**JURISDICTION, PARTIES AND VENUE**

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345, and Title VII of the Civil Rights Act of 1964, as amended, 1990, 42 U.S.C. §2000e-5.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

4. Plaintiff Eric Marion ("Marion") resides in New Windsor, New York, Orange County.

5. At all relevant times, defendant AmerisourceBergen, Drug Corporation ("AB" or "AmerisourceBergen" or "defendant") has continuously operated as an employer as defined under Title VII and the Human Rights Law, and has continuously had at least 15 employees.

6. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-(5), and 28 U.S.C. §1331, as this case arises under the laws of the United States.

7. Venue is appropriate here, because the events about which plaintiff complains occurred where defendant AmerisourceBergen regularly conducts its business in Newburgh, New York, located in Orange County, New York. This is the appropriate federal court location for actions that arise from acts in that Orange County location.

8. All administrative prerequisites have been met as plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. He has satisfied the prerequisites under Title VII and received a Right to Sue Letter from EEOC.

9. More than thirty days prior to the institution of this lawsuit, Marion filed

charges with the Commission alleging violations by AmerisourceBergen. All conditions precedent to the institution of this lawsuit have been fulfilled.

      10. In addition, plaintiff brings an additional claim under New York State Executive Law §§296(1)(a) and §297, the Human Rights Law, alleging that defendant Amerisource discriminated under the New York Human Rights.

      11. As such, plaintiff requests that the court take supplemental jurisdiction of his claims under the Human Rights Law. Such substantially overlap with those brought under Title VII.

## **FACTS**

      12. Eric Marion (Male), was employed by AmerisourceBergen ("Defendant") as a Computer Operator II from October 2, 2017 until defendant terminated his employment on June 4, 2018. During his employment, he was sexually harassed and subjected to inappropriate touching by both his direct manager, JoJo Tiongson (JoJo), Computer Operations Manager, and Mike Troiano (Mike), Compliance Manager.

      13. Marion is a young man, no older than twenty-seven, and appears as an even younger man. He is of a gentle nature and demeanor and affect, as well as soft-spoken.

      14. On November 12, 2017, JoJo intentionally touched Marion in my private/groin area with a vacuum cleaner cylinder part and held it there for several seconds. Marion was shocked and laughed out of nervousness, and it was clearly sexual and unwelcome. He was very uncomfortable, and he then walked away.

      15. On about December 15, 2017, Mike came into his work area, walked up behind him while he was aside the printer, and rubbed his groin and front of his hip area against Marion's backside and rear end in a sexual way, so close to Mario that Marion could feel his

genitals.  Marion walked away from him to let him know his conduct was not welcome.

16. After this, Mike continued to come into Marion's work area on a regular basis in the next few months when Marion was alone, hovering over close to Marion while he sat, which made Marion feel uncomfortable.  Mike constantly invaded Marion's space and would come into his work area almost every day for no real reason or for what seemed like manufactured reasons (such as helping him with a printer).  Marion felt him often lurking and attempting to intimidate him with Mike's own authority or access to Marion as a manager to come into Marion's office -- with no real tasks to perform or reason for being there.  In fact, Mike often asked or would point to Marion's stapler, asking for help in some way with that or some other office task.

17. Marion formed a good faith belief that this "attention" from Mike was due to Marion's unwillingness to engage in or reciprocate the sexual contact that Mike had started near the printer, and later because of Marion's subsequent complaints about the printer incident and follow-up visits.  At first, Marion dared not say or do anything to complain because he feared it could jeopardize his job with defendant.

18. In this same time period, JoJo would often text Marion at work almost every day, and ask Marion almost every Friday by text or in person what he was doing on the weekend.  This made Marion very uncomfortable.

19. On or about February 20, 2018, JoJo was in Marion's work area as they worked on a project together, moving together from computer to computer.  All at once when Marion was standing, he put his hand on Marion's left buttock and squeezed it hard with his whole hand, holding it for a few seconds. Marion jumped away and then walked away to let JoJo know that he was uncomfortable and that JoJo's conduct was unwelcome.

20. The next day, JoJo was seated and chatting with Marion in his office, while leaning back and looking down with JoJo's legs spread wide, when he reached over on the desk to open up his bag widely and show Marion a large unopened box of condoms. JoJo took out a bottle of lotion, applying it to his hands as he kept talking. Later that day, JoJo chatted with Marion in the warehouse and asked him questions about his personal life, trying to find who Marion lived with and since when: this caused Marion to feel threatened and intimidated.

21. An hour or two later, JoJo scared Marion again with his reaction to Marion's refusal to welcome his harassment. As they stood in the warehouse, JoJo pointed to a sharp object on the floor, part of a piece of equipment, and told him that he could chop or cut off Marion's head with that. JoJo looked at Marion severely, even menacingly, and Marion was fearful. JoJo followed Marion around all day at work that day, sticking close to Marion on the computer project.

22. JoJo also denied Marion opportunities for promotion after Marion refused his sexual advances. JoJo instead promoted a less qualified female in the department to a lead position, after shaking his head and telling Marion that he could not apply for the position. JoJo and Defendant retaliated against Marion for rejecting his advances, and engaged in sexual harassment by denying Marion a tangible job benefit, the promotion to which Marion was most qualified. Further, JoJo continually made false accusations to Marion about his performance and berated Marion about alleged problems that did not exist.

23. While out on medical leave on March 5, 2018, Marion filed by email a formal complaint of sexual harassment with Defendant's HR Service Center and informed defendant of JoJo's behavior, including inappropriate touching and intimidation.

24. By the end of March 2018, Marion heard back from Martha Fernandez, HR in

California, that his claims had not been corroborated.

25. When Marion returned to work on April 16, 2018, defendant subjected him to excessive scrutiny, false accusations, and JoJo excluded Marion from department decisions in retaliation for his complaint. In fact, Marion was told on one occasion that defendant's HR Service Center did not plan to take any action because there was no corroboration of the harassment by any other witness.

26. Nevertheless, on or about April 17, Marion persisted in making a further new complaint by email about Mike's conduct and his sexual and threatening behavior, and defendant again did nothing about it. Marion also sent a series of emails asking for action to be taken regarding his earlier complaints, reiterating that he didn't feel safe and asking for updates on the status of his complaints.

27. Importantly, in one meeting with Human Resources on or about April 20, 2018, a Human Resources investigative officer named Mark Nichols attended a meeting via telephone with other HR representatives. Nichols asked Marion if he had questions, again informed Marion that they had been unable to "corroborate" Marion's story, and raised his voice instructing Marion that he "will respect" Nichol's staff. Nichols also stated, "You are going to work with these people…." and that Marion should go back and work with them and be managed by JoJo. "If I hear from you again, it's going to be about business as usual." Such evidenced defendant's lack of remedial action, and defendant's retaliatory motive against Marion, threatening his future employment if he persisted in his complaints.

28. Marion considered this to be a hostile threat and retaliatory against him for my complaints and reporting his fears for his safety on his return, and an instruction to stop making any other complaints whatsoever.

29. Instead, JoJo was now often yelling at Marion in retaliation for his complaints, making him feel more harassed and intimidated.  JoJo began to deny Marion even a 10-minute change to his start schedule, which he granted to others.  Also, JoJo wrote Marion false information by email, alleging that this was not a new requirement on the start time.  JoJo and HR also began to require a 3-day warning period on when he needed to alter his shift by a half hour to attend therapy appointments following a surgery. The HR representative, Tarsha McNeil, and Mike met with me, and Tarsha yelled at Marion about the 3-day warning being a pre-existing requirement, even where it had not been such a requirement.

30. After Marion's complaint and after May 9 when he returned from surgery, Mike's behavior worsened in continuing to come into Marion's office, startling Marion when Mike opened the door quickly, and asking Marion repetitive questions about office tasks, including repeated loud "hellos" and questions about the stapler.

31.     On June 4, 2018, defendant's Human Resources area sent Marion home and informed him that his employment was suspended for the day, escorting Marion out of defendant's premises.  At that time, Human Resources also gave Marion a "Corrective Action" document listing JoJo as the supervisor and which referred to the discipline as a "Final Written Warning."  It cited pretextual reasons, alleging that Marion had inappropriately informed other employees by email regarding the status of a changed delivery. The Action document also stated that Marion had acted with an alleged aggressive tone in communicating with a co-worker, sent an email to his supervisor with an alleged disrespectful tone when being coached, and stated that Marion had been insubordinate with other supervisors and had acted to create a "lack of harmony…."

32. The Final Warning did not refer to any immediate discharge.

33. Nevertheless, later that same day, defendant's HR officer telephoned Marion and informed him that he was not to report to work.  The HR officer explained that defendant had decided to "part ways" with Marion: Marion's employment was now terminated.  Marion was told that he would receive more information about the reasons in the mail.  Marion received no additional written or other information about the reason(s) for the termination, other than the Action form that had been presented to him before defendant sent him home on suspension.

34. None of the criticisms that Marion learned about on June 4 made any sense, and they are a pretext for defendant's retaliatory action.  Rather, Marion made a series of good faith and repeated complaints about the sexual harassment, the lack of safety, and defendant's lack of action.

35. Defendant's managers JoJo and Mike retaliated against Marion for his original complaints to Human Resources about their sexual pressure.  When Marion continued to make his complaints known and Marion's concerns for his safety, defendant made up reasons to terminate Marion's employment in retaliation for his continued and sustained opposition to the unlawful harassment.

36. Based on the above, defendant discriminated against Marion due to his sex, male, when its supervisors sexually harassed Marion, and created a hostile environment and alteration of Marion's working conditions.  It also unlawfully denied Marion an opportunity for promotion and terminated Marion's employment in retaliation for having made good faith complaints about the harassment, and having opposed the unlawful hostile environment, all in violation of Title VII and the Human Rights Law.

**FIRST CAUSE OF ACTION**

**Title VII (Harassment and Retaliation)**

37. Plaintiff repeats and realleges paragraphs 1 through 36 of this Complaint as if set forth herein.

38. Defendant AmerisourceBergen violated Title VII as alleged above, failed to prevent unlawful sexual harassment and the creation of a hostile environment on the basis of sex, and participated in retaliating against plaintiff when he engaged in protected activity and opposed the unlawful conduct.

39. In particular, defendant through its supervisory personnel subjected Marion to a hostile environment based on his sex, subjected Marion to a hostile environment on the basis of his sex, and failed to take prompt and remedial action to prevent further harassment on the basis of his sex following his multiple good-faith complaints.  Further, defendant through its managers also subjected Marion to retaliatory harassment that affected the terms and conditions of the work environment, by harassing him and subjecting him to harassment, excessive and differential scrutiny, constant visits to his office, and manufactured criticism.  This culminated in defendant's action, through its Human Resources employees, in suspending and then almost immediately terminating Marion's employment, while seizing on pretextual and vague criticisms of Marion's interactions and alleged contributions to "disharmony" in the workforce.

40. As such, defendant actions harmed plaintiff such that it is liable to her for backpay, reinstatement or front-pay, lost benefits, attorneys' fees, compensatory damages and emotional harm, and punitive damages.

## SECOND CAUSE OF ACTION

**New York Human Rights Law (Harassment and Retaliation)**

41. Plaintiff repeats and realleges paragraphs 1 through 40 of this Complaint as if set forth herein.

42. Defendant AmerisourceBergen violated Human Rights Law as alleged above, Executive Law §296 (1)(a) as alleged above, failed to prevent unlawful sexual harassment and the creation of a hostile environment on the basis of sex, and participated in retaliating against plaintiff when he engaged in protected activity and opposed the unlawful conduct.

43. In particular, defendant through its supervisory personnel subjected Marion to a hostile environment based on his sex, and failed to prevent unlawful sexual harassment and to take prompt and remedial action to prevent further harassment on the basis of his sex following Marion's multiple good-faith complaints.  Further, defendant through its managers also subjected Marion to retaliatory harassment that affected the terms and conditions of the work environment, by harassing him and subjecting him to harassment, differential scrutiny and criticism.  This culminated in defendant's action, through its Human Resources employees, in suspending and then terminating Marion's employment, while seizing on pretextual and vague criticisms of Marion's interactions and alleged contributions to "disharmony" in the workforce.

44. As such, defendant actions harmed plaintiff such that it is liable to her for backpay, reinstatement or front-pay, lost benefits, compensatory damages and emotional harm.

**WHEREFORE**, plaintiff Eric Marion demands judgment against defendant Amerisource Bergen as follows:

(a) on the First Cause of Action, an award of statutory damages, including back pay and fringe benefits, compensatory and punitive damages, the exact amount to be proven at trial; including, but not limited to, injunctive relief such as reinstatement to his prior position or front-pay, attorneys' fees, costs and disbursements incurred in connection with this action; and

(b) on the Second Cause of Action, an award of backpay and fringe benefits, and compensatory damages, the exact amount to be proven at trial; including, but not limited to including injunctive relief such as reinstatement to his prior position or front-pay, and

costs and disbursements incurred in connection with this action.

Dated: Goshen, New York
       August 6, 2018

                                        FOULKE LAW FIRM

                                        By:   *s/Michael Ranis, Esq.*
                                        Michael Ranis, Esq. (MBR #3757)
                                        ATTORNEYS FOR PLAINTIFF
                                        55 Main Street, 2nd Floor
                                        Goshen, NY 10924
                                        845-294-4308